# In the United States Court of Federal Claims

No. 24-887C

(Filed: September 10, 2025)

```
*************************************
                                    *
JOY F. CHIPIMARQUEZ,                *
                                    *
            Plaintiff,              *
                                    *
    v.                              *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*************************************
```

## OPINION AND ORDER

On June 3, 2024, Plaintiff Joy Chipimarquez, filed her complaint here, alleging that the Board for Correction of Naval Record's ("BCNR's") decision denying her application to set aside her nonjudicial punishment and overturn her discharge from the Navy was irrational and contrary to law. Compl. ¶ 47, ECF No. 1. She also seeks $277,460.00 in back pay credit for time in grade to be calculated toward retirement, reimbursement of penalty fee levied, and retirement pay. Compl. ¶ 29–30.

Plaintiff filed a Motion for Judgment on the Administrative Record. Defendant filed a Cross Motion for Judgment on the Administrative Record and Response in Opposition to Plaintiff's Motion. The motions are fully briefed, and oral argument is unnecessary. Because the Board for Correction of Naval Record's ("BCNR's") decision was not arbitrary, capricious, or an abuse of discretion, this Court **GRANTS** Defendant's Cross Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Motion.

### I. BACKGROUND

Plaintiff served as a petty officer in the Navy for over 17 years. Administrative Record ("AR") 126, 973-977.[1] During her service, Plaintiff received one prior nonjudicial punishment for falling asleep on watch. On October 27, 2017, while on board the USS CARL VINSON, the commanding officer ordered a urinalysis for the entire unit, and Plaintiff tested positive for cocaine use which led to subsequent hearings. AR 395.

#### A. Plaintiff's Administrative Hearings and Determinations.

---

[1] The facts in this decision are taken from the administrative record. ECF No. 11.

### 1. Plaintiff's Non-Judicial Hearing and Resulting Punishment.

On December 7, 2017, Plaintiff's commanding officer notified Plaintiff that he was convening a Captain's Mast ("non judicial hearing") on December 11, 2017, because she was suspected of violating Article 112a, UCMJ. AR 391–94. Plaintiff, through counsel, requested the command's staff judge advocate to provide her with the "complete drug lab litigation package." AR 163. In response, the deputy staff judge advocate requested that the Navy Drug Screening Lab provide the command a "summary Documentation Package" used for administrative separation boards and to make a laboratory expert witness available to testify at a later date. AR 448.

On December 7, 2017, Plaintiff went to an urgent care facility and completed a hair follicle drug examination, AR 442, and, through counsel, requested the commanding officer to postpone her Captain's Mast to await the result of the examination. AR 416–17. The request to postpone the hearing was denied, and the hearing was held on December 11, 2017. AR 416 (denial of extension); AR 1172–74 (report of nonjudicial punishment).

At her non-judicial hearing, Plaintiff, through counsel, pled not guilty before her commanding officer. After considering the urinalysis test result, the commanding officer found Plaintiff guilty of wrongfully using cocaine in violation of Article 112a, UCMJ. AR 1172. As punishment, Plaintiff was reduced by one paygrade, ordered to forfeit half of her monthly pay for two months, and placed on restriction for 45 days. AR 1172.

On December 18, 2017, Plaintiff appealed her non-judicial punishment to the appellate authority, the Commander of Carrier Strike Group ONE ("Commander"), arguing that there was insufficient evidence to support a finding of guilt, her punishment was excessive, procedural errors occurred during her hearing, and there were irregularities and deficiencies in the command urinalysis. AR 409. In support, Plaintiff provided a negative result from a hair follicle drug examination taken at an urgent care facility, on December 7, 2017, over a month after her urinalyses. *Id.*; AR 442–47 (hair follicle exam results).

The Commander reviewed Plaintiff's arguments and submitted materials and ultimately denied the appeal, finding that under statute and regulations, the commanding officer is given "broad discretion in evaluating evidence and determining appropriate punishment." AR 404. The Commander found that the commanding officer "consider[ed] and re-consider[ed] all of the evidence" before adjudicating the nonjudicial punishment or commenting on Plaintiff's appeal. *Id.* After reviewing the evidence and appeal himself, the Commander found that the commanding officer did not abuse his discretion when making the factual findings or the issuing punishment he awarded. *Id.*

### 2. Plaintiff's Mandatory Separation Proceeding.

Plaintiff was subsequently subjected to a mandatory administrative separation proceeding, which the Navy imposes upon the finding of a positive drug test result unless it was caused by administrative error or sanctioned reasons. *See* 15 MILPERSMAN 1910-146, ¶ 2.a.(1) (Reg. App'x at 16) (A convening authority must initiate administrative separation for

"drug abuse" if a Sailor tests positive for a controlled substance on a drug urinalysis screening, unless a commanding officer determines that there was an administrative error with the test or the drug use was not "wrongful.").

An administrative separation board can recommend either retention or separation to the separation authority. MILPERSMAN 1910-702, ¶ 3.a. (Reg. App'x at 58). The commanding officer can disagree with the administrative separation board and make its own recommendation to the separation authority. *Id.* And ultimately, the separation authority "is the individual who makes the final retention or separation decision." *Id*. at 1.b. (Reg. App'x at 57).

### i.  The Administrative Separation Board's Recommendation

On December 14, 2017, Plaintiff requested that the command provide her with specific documents, to assist her preparation for the administrative separation board. AR 921–23. Some of the requested documents were provided to counsel prior to the start of the hearing, while others were not. AR 146–49. The day before the administrative separation board, Plaintiff notified the command that she wanted the command to request the "full litigation package" from the Navy Drug Screening Lab—normally requested only for courts-martial, not the regular package routinely used for administrative boards. AR 146.

On January 3, 2018, the administrative separation board was convened. During voir dire, Plaintiff challenged one of the board members, Lieutenant Sharkey, for cause. AR 366. The hearing was recessed so that the parties could confer with the legal advisor. *Id.* When the hearing resumed, both parties asked Lieutenant Sharkey follow-up questions and then agreed to proceed with the hearing. *Id.* Plaintiff did not re-raise her challenge to Lieutenant Sharkey's appointment. *Id.*

During Plaintiff's opening statement she raised another objection— contending that she did not receive all the documents she requested from the command. *Id.* The senior member noted the objection for the record but decided to continue the hearing. AR 367. The parties then submitted their exhibits, called witnesses, and Plaintiff presented an "unsworn statement." AR 367–80. Before deliberations, the board members received the Navy Drug Screening Lab's full documentation package—normally prepared only for courts-martial—and a discrepancy report from the October 27, 2017, command urinalysis. AR 380. Both parties then made closing arguments. *Id.*

The board voted unanimously that the preponderance of evidence did not support the "Pattern of Misconduct" basis for separation. AR 382. The board voted two-to-one that the preponderance of evidence supported the "Commission of a Serious Offense" basis for separation. *Id.* The board voted unanimously that the preponderance of the evidence supported the "Drug Abuse" basis for separation. *Id*. Despite finding two separate bases for separation, the board members recommended that Plaintiff be retained in the Navy. *Id.*

On January 5, 2018, two days after the administrative separation board concluded, the commanding officer initiated a command investigation "to inquire into the facts and circumstances underlying the discrepancies identified in the command sweep urinalysis that

occurred on 27 October 2017." AR 569. On February 5, 2018, an investigating officer issued his findings from the investigation in a report. AR 552–68.

The report noted that the Navy Drug Screening Lab report "highlights two principal issues" with the command's urinalysis program. AR 555. Nevertheless, the report found that "neither deficiency undermine[d] the integrity of the positive samples collected" during the October 27, 2017, command urinalysis. *Id*. The report explained that "although there was opportunity for personnel to adulterate samples while standing in line and not being watched, no specimens received an 'adulterated specimen' deficiency code, and none are believed to have been tampered with." AR 566. Moreover, of the 18 urinalysis samples that tested positive, only one was given a discrepancy code by the Great Lakes Navy Drug Screening Laboratory. AR 567. "The remaining 17 positive samples [were] fully accounted for and had zero discrepancies flagged." *Id*.

On January 11, 2018, Plaintiff submitted a letter of deficiency to the separation authority, the Assistant Secretary of the Navy, to appeal the results of the administrative separation board. AR 128. The appeal requested that the separation authority "find no basis for drug abuse and make a determination for [Plaintiff's] continued retention in the naval service" or, alternatively, order the commanding officer to convene a new administrative separation board hearing. *Id.*

Plaintiff asserted that this relief was appropriate because: (1) "the composition of the board created a bias against" her; (2) the legal advisor "inappropriately denied" Plaintiff's legal challenge to his appointment; (3) the command withheld "exculpatory and relevant evidence,"; (4) the recorder presented irrelevant and highly prejudicial information to the board; (5) the command urinalysis was faulty because Sailors administering the urinalysis failed to follow protocol; (6) there was insufficient evidence to establish that Plaintiff's cocaine use was "wrongful,"; and (7) it was inappropriate to introduce the nonjudicial punishment as evidence at the administrative separation hearing. AR 129–138.

      ii.  The Commanding Officer's Investigation and Recommendation

On February 10, 2018, the commanding officer, pursuant to MILPERSMAN 1910-600, submitted his recommendation to the separation authority to administratively separate Plaintiff from the Navy and responded to allegations raised in Plaintiff's appeal. AR 23–27; *see* Reg. App'x at 49–55.

The commanding officer addressed Plaintiff's allegations that her positive urinalysis for cocaine was unreliable due to discrepancies identified by the Navy Drug Screening Lab. *Id*. The commanding officer explained that the command investigation concluded despite observers' failures to follow certain procedures when administering the urinalysis test, that the investigation did not cast doubt on the accuracy of Plaintiff's positive test for cocaine. AR 26–27. The Great Lakes Navy Drug Laboratory discrepancy report did not identify discrepancies in her sample, nor did Plaintiff present any evidence to the administrative separation board that her sample had been mishandled. *Id*. Among other reasons noted in his recommendation, the commanding officer disagreed with the board's recommendation to retain Plaintiff because of the Navy's zero

tolerance policy on drug use.  AR 27.

Addressing Plaintiff's allegation that the command purposely withheld relevant evidence from her, the commanding officer explained that "he caused all [the] relevant evidence that was within [his] power to [be] released to the Board" and that a substantial number of documents that Plaintiff requested were not relevant or were protected from release by other statutes, such as the Privacy Act. AR 25–26.  Moreover, the commanding officer noted that the senior member denied Plaintiff's counsel request for the command to produce the remaining evidence to the board, ruling that the remaining evidence was not relevant.  AR 26.

Responding to her allegations that board members were biased, the commanding officer stated that he had "confidence in the three members he chose" to be fair and impartial, that Plaintiff only challenged one of the member's appointment to the board, that she did not renew her challenge after conferring with the legal advisor—thereby, waiving the issue on appeal—and that, even if she had renewed her challenge, the commanding officer would have denied the challenge because there is no evidence that the members were unfair and impartial.  AR 25.

### iii. The Separation Authority Considered the Administrative Board's Recommendation, the Commanding Officer's Recommendation, Plaintiff's Letter of Deficiency, and Plaintiff's Rebuttal and Made its Final Determination.

After receiving a copy of the commanding officer's recommendation letter, Plaintiff submitted a rebuttal.  AR 880–82.  On February 20, 2018, the Deputy Chief of Naval Personnel forwarded the commanding officer's recommendation and Plaintiff's rebuttal to the separation authority.  AR 46–47.

On May 14, 2018, the separation authority directed the administrative separation of Plaintiff from the Navy with a General (Under Honorable Conditions) characterization of service.  AR 29.  The separation authority noted Plaintiff's letter of deficiency and her rebuttal but ultimately concluded that "there was no evidence that [her urinalysis] sample was discrepant or mishandled, or that her sample was improperly tested."  AR 29.  Plaintiff was discharged from the Navy on June 8, 2018.  AR 1169.

### B. Plaintiff's Application to the Naval Discharge Review Board

On December 26, 2019, Plaintiff submitted a petition to the Naval Discharge Review Board ("NDRB"), requesting: (1) an upgrade of her characterization of service; (2) return of all lost pay and allowances from the December 11, 2017 nonjudicial punishment; (3) constructive service credit; (4) correction of the narrative reason for her discharge; and (5) that her nonjudicial punishment be set aside.  AR 111–12.

The NDRB's authority is limited "to review[ing] the character, reason and authority of a discharge for members of the Navy and Marine Corps who have been discharged from active military status in the past 15 years." 19 SECNAV M-5420.1, Chap. 2, ¶ 202.  The NDRB does not have the ability to reinstate a Sailor to active duty or revoke their discharge.  *Id*., ¶ 209.a.

5

The NDRB will correct discharge records for propriety reasons if the NDRB identifies "an error of fact, law, procedure, or discretion associated with the discharge at the time of issuance of that discharge" that was prejudicial to the Sailor or Marine. *Id*., ¶ 210.a.(1).

On November 18, 2020, the NDRB issued a decision granting Plaintiff's request to upgrade her characterization of service to "Honorable" and to correct the narrative reason for her separation to "secretarial authority." AR 113. The NDRB also changed Plaintiff's re-entry code to "RE-1"—allowing her to re-enlist into the Navy, if she chose. AR 118. Plaintiff, however, did not re-enlist. Although Plaintiff requested backpay and that her nonjudicial punishment be set aside, the NDRB explained that it could not consider these requests because the NDRB "does not have the authority to determine adjustments associated with . . . pay and entitlements, service credit and record adjustments." *Id*.

The NDRB's grant of relief was based upon a finding by the board that Plaintiff was "denied an opportunity to fully present her case before the command in a legitimate effort to advocate for her innocence and retention" when the command did not provide Plaintiff with documents she requested and did not suspend the administrative separation hearing after receiving the Great Lakes Navy Drug Screening Laboratory's discrepancy report. *Id*.

Further, the NRDB expressed concerns that Plaintiff was denied the opportunity to present her case concerning the use of cocaine:

> Evidence within the record substantiates the command's lack of consideration for the Applicant's full efforts to dispute the use of cocaine. One example of this is their misinterpretation of a hair follicle drug test the Applicant completed to support her defense that she concluded she had not used cocaine. Although not required to be accepted by the command, although the test was done by an accredited lab independent of the DOD, their dismissal of the results determining negative drug test findings using a smaller unit of measurement that DOD detection levels was not interpreted properly or given fair, principled, and rational analysis.

*Id*.

### C. Plaintiff's Application to the Board for Correction of Naval Records

In November 2021, Plaintiff submitted an application to the board for Correction of Naval Records ("BCNR") requesting the BCNR to (1) Restore her to paygrade E-6 with all rights and privileges to which she was deprived; (2) Grant her constructive active duty credit for the period from the date of her discharge to the present day, which would then make her retirement eligible; (3) Grant her back pay and allowances from the date of her nonjudicial punishment to the present day; (4) Set aside the nonjudicial punishment of 11 December 2017 and remove all references to misconduct from her military record; (5) Overturn her separation from the Navy. AR 78–79.

While the NDRB focuses on reviewing discharge decisions for impropriety or inequity, the BCNR has broader authority, including reviewing general courts-martial discharges and addressing errors or injustices in military records. 10 U.S.C. § 1552(a)(1), 32 C.F.R. § 723.2.

6

With respect to administrative and special courts-martial discharges, BCNR is the highest level of review within the Department of the Navy. 32 C.F.R. § 723.6(e)(1).

On February 22, 2022, the Office of Legal Counsel for the Navy Personnel Command ("Office of Legal Counsel") provided the BCNR an advisory opinion recommending denying Plaintiff's application, finding that Plaintiff's allegations of error and injustice were without merit. AR 12–22. Plaintiff submitted a rebuttal to the Office of Legal Counsel's advisory opinion. AR 66–76.

On July 19, 2022, the BCNR denied Plaintiff's petition to correct her military records. AR 1–4. In its decision, the BCNR explained that it considered Plaintiff's arguments and evidence, but that the BCNR substantially concurred with the Office of Legal Counsel's recommendation to not correct her military records. AR 1–2.

The BCNR disagreed with the NDRB's decision to correct Plaintiff's DD Form 214 but left the NDRB's corrections undisturbed. AR 3–4. Unlike the NDRB, the BCNR determined that Plaintiff's nonjudicial punishment and administrative separation proceedings were conducted in accordance with applicable instructions and regulations. AR 3. The BCNR noted that those proceedings were also reviewed and upheld by the separation authority. AR 3. The BCNR stated the following:

> The Board noted the corrections to your record by the NDRB, the Board, however, determined that your NJP proceedings and ADSEP Board proceedings were conducted in accordance with applicable instructions. Those proceedings were reviewed by ASN (M&RA) along with the evidence in the case. The Board thus determined that you were afforded all the due process required by instruction. Moreover, the Board is not an investigative body and relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. After consideration of the voluminous evidence you provided, the Board found this evidence insufficient to overcome this presumption. Accordingly, the Board concluded that there is no probable material error, substantive inaccuracy, or injustice in the imposition of the NJP or your administrative separation from the Navy. Accordingly, given the totality of the circumstances, the Board determined that your request does not merit relief.

*Id*. Thus, the BCNR determined that Plaintiff was "afforded due process and the same rights as any member subject to the UCMJ that is similarly situated" at the nonjudicial punishment proceeding. AR 2. On that point, the BCNR noted that Plaintiff was: given proper notice of the offenses she was alleged to have committed; notified of her rights under Article 31, UCMJ; given an opportunity to consult with an attorney prior to the nonjudicial punishment; given the option to appear in person before the commanding officer at the nonjudicial punishment hearing; and given an opportunity to call witnesses—which she declined to exercise. *Id.* The BCNR also determined that the commanding officer "was not obligated to grant [her] request to delay the [nonjudicial punishment proceeding], thus he did not violate any order or regulation by proceeding." *Id.*

Addressing the hair follicle test, the BCNR explained that it was not persuaded that the results of the hair follicle test constituted conclusive evidence that Plaintiff did not use cocaine. AR 2–3.  In this regard, the BCNR noted that the only approved drug testing method in the Navy is a urinalysis certified by a Navy Drug Screening Laboratory.  AR 2.  Further, the BCNR noted that Plaintiff had an opportunity to present the result of the hair follicle test to the nonjudicial punishment appellate authority, who upheld her nonjudicial punishment and found that commanding officer did not abuse his discretion in his nonjudicial punishment findings.  *Id.*

The board found that there was sufficient evidence presented at the nonjudicial hearing to prove wrongful drug use under Article 112a, UCMJ.  AR 2.  The BCNR explained that the Manual for Courts-Martial allows a fact finder to draw an inference from a urinalysis result that the accused had knowledge of the presence of a controlled substance in their body—and "this permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge" at a nonjudicial punishment proceeding.  *Id.*  Moreover, the BCNR noted that Plaintiff did not submit evidence to the BCNR that her positive drug screen was a result of innocent ingestion, leading the BCNR to find that she did not innocently ingest cocaine.  *Id.*  Thus, the board concluded that her positive urinalysis constituted sufficient and reliable evidence for her commanding officer to have determined at the nonjudicial punishment hearing that Plaintiff violated Article 112, UMCJ.  *Id.*

The BCNR's decision also addressed Plaintiff's claims regarding the deficiencies in the command urinalysis.  AR 3.  The BCNR found no evidence showing that Plaintiff's urine specimen was "was tampered with or improperly tested." *Id.*  The BCNR noted that the Navy Drug Screening Lab's discrepancy report did not identify any issues with Plaintiff's urine specimen.  *Id.*  ("[T]here were no discrepancy codes assigned to the sample that belonged to you.").  The BCNR also noted that the command investigation into the testing discrepancies made a finding that the "integrity of 18 positive urine samples, remain intact."  *Id.*  While the BCNR acknowledged that the command investigation into the urinalysis testing program "revealed concerns," it found no evidence affecting the integrity of Plaintiff's urine sample.  *Id.*

## II. DISCUSSION

Although there are many facts concerning various military proceedings that occurred prior to the BCNR's decision, the Federal Circuit has elucidated that this Court is tasked with reviewing the BCNR's decision—as it is the final reviewing authority which considered all of the prior military proceedings and allegations at issue here. *Doyon v. United States*, 58 F.4th 1235, 1242 (Fed. Cir. 2023) ("Service members who are dissatisfied with the decision of the BCNR may seek judicial review." (citing *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991)).  A court may only set aside the BCNR's decision if it was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law"—i.e., "essentially the standard under which administrative agency decisions are reviewed." *Fisher*, 402 F.3d at 1180.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### A. The BCNR's Finding of Plaintiff's Wrongful Use was Not Arbitrary and Capricious.

Plaintiff asserts that the BCNR decision upholding her separation was improper because there was insufficient evidence to find her guilty of violating Article 112a, UCMJ, the wrongful use of cocaine. ECF No. 14 at 55–60. First, Plaintiff argues that the results of the urinalysis screening were unreliable because discrepancies were identified in some of the hundreds of urine samples submitted after the command's urinalysis screening. *Id*. Second, she argues that because the urinalysis results were unreliable, it was inappropriate for the commanding officer and the administrative separation board to rely on them as evidence that Plaintiff used cocaine wrongfully. *Id*. at 55, 57.

Plaintiff's arguments are unpersuasive. The BCNR reviewed the applicable law, the Manual for Courts-Martial ("MCM"), which interprets the UCMJ, when the BCNR considered Plaintiff's argument that there was insufficient evidence to find her guilty of wrongful use of a controlled substance.[2] The BCNR states that, "The MCM provides that knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence and this permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge." AR 0002. Further the Board considered that, "The Board found no evidence that you somehow innocently or unknowingly ingested cocaine and you provided none." Thus, the Board concluded that "your positive urinalysis constituted sufficient and reliable evidence that you violated Article 112a, UCMJ, your NJP is valid, and your CO acted within his discretionary authority pursuant to the MCM." AR 2.

Further, the BCNR considered Plaintiff's hair follicle test but did not find the evidence persuasive. The BCNR noted that the commanding officer and nonjudicial punishment appellate authority ultimately considered the hair follicle test evidence, but neither were persuaded that it proved Plaintiff did not ingest cocaine. AR 2–3. Further, the BCNR noted that the only approved drug testing method in the Navy is a urinalysis certified by a Navy Drug Screening Laboratory. AR 2. Ultimately, the BCNR concluded that it "was not persuaded that the hair follicle test constitutes conclusive evidence that [Plaintiff] did not use cocaine." AR 2.

The BCNR's decision also addressed Plaintiff's claims regarding the deficiencies in the command urinalysis. AR 3. The BCNR found no evidence showing that Plaintiff's urine specimen was "was tampered with or improperly tested." *Id.* The BCNR noted that the Navy

---

[2] The MCM states that this charge contains two elements: (a) the use of a controlled substance and (b) that the use was wrongful. MCM, Pt. IV, ¶ 37(b)(2)(a)-(b). Regarding element (a), the MCM explains that the use must be knowing and that "[k]nowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge." MCM, Pt. IV, ¶ 37(c)(10). Regarding element (b), the MCM provides that the use is wrongful "if it is without legal justification or authorization," and that such wrongfulness may be inferred "in the absence of evidence to the contrary." MCM, Pt. IV, ¶ 37(c)(5).

9

Drug Screening Lab's discrepancy report did not identify any issues with Plaintiff's urine specimen.  *Id.*  ("[T]here were no discrepancy codes assigned to the sample that belonged to you.").  The BCNR also noted that the command investigation into the testing discrepancies made a finding that the "integrity of 18 positive urine samples, remain intact."  *Id.*  While the BCNR acknowledged that the command investigation into the urinalysis testing program "revealed concerns," it found no evidence affecting the integrity of Plaintiff's urine sample.  *Id.*

Here, substantial evidence supports the BCNR's determination that Plaintiff did not demonstrate probable material error or injustice in the separation board's finding of knowing, wrongful use of cocaine.  In addition to Plaintiff's positive urinalysis results, the administrative separation board record reflected testimony from a drug expert employed by the Navy Drug Screening Lab and Navy personnel who administered the command's urinalysis screening on October 27, 2017.  AR 361–81.  A relevant excerpt of the testimony is included below:

> My name is Harry Qui, Lieutenant, Medical Service Corps, U.S. Navy.  I am a biochemist with a Master's degree in toxicology and pharmacology and a doctorate in medicine science. I was a post-doctorate fellow at University of Connecticut before joining the military. Naval Drug Lab Great Lakes receives drug samples from all of the uniformed services. When samples arrive, the package and the individual bottles are checked for tampering. If there is evidence of that, a discrepancy code is issued and notification is sent to the command. From the bottle submitted, part of the sample is poured into a test tube, and then sent to the screening department for a presumptive test. This is sort of like a home pregnancy test, it is not as accurate but is useful for screening. If that comes back positive, then a confirmatory test is done using GCMS. A laboratory accession number (LAN) is assigned when a sample is poured in a test tube so we don't have to use social security numbers or DoD ID numbers. A visual inspection is conducted to detect foreign substances in the samples. For LAN O170579IOl8, the sample tested positive for 789 ng/mL of cocaine after a confirmatory test. The cut-off limit for cocaine is 100 ng/mL. We have measures in place at the lab to protect against cross contamination. We put a blind negative and blind positive in every batch, randomly placed. We also have other protections to ensure no cross contamination from sample to sample. There were no discrepancy codes assigned to [Plaintiff's] sample 01705791018.

AR 373-374.

In addition to the expert's testimony, the commanding officer initiated an investigation "to inquire into the facts and circumstances underlying the discrepancies identified in the command sweep urinalysis that occurred on 27 October 2017."  AR 569.  The report noted that the "integrity of the 18 positive urine samples collected on 27 October 2017 is intact.  Only one of the 18 positive samples, B445 00, had a discrepancy code, LL, which is an observer or collector initial discrepancy.  The remaining 17 positive samples are fully accounted for and had zero discrepancies flagged."  AR 567.

Military courts have repeatedly held that a positive urinalysis accompanied by expert

10

testimony interpreting the urinalysis is sufficient to establish a permissive inference of wrongful use. *See, e.g.*, *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) (noting that, under the Military Rules of Evidence, a urinalysis and expert testimony "provide[] a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning physiological effects"); *United States v. Harper*, 22 M.J. 157, 159 (C.M.A. 1986) ("We hold that these laboratory results of urinalysis coupled with expert testimony explaining them constituted sufficient evidence to support the military judge's finding beyond a reasonable doubt that appellant used [marijuana] on three occasions.").

Thus, the BCNR rationally found that the evidence presented by the Navy concerning the urinalysis was sufficient to support a permissive inference of knowing, wrongful use, even in the face of Plaintiff's hair follicle test and theory that the specimen was tampered with or improperly tested. "Standing alone, a positive urinalysis may be legally sufficient to sustain a conviction for wrongful use of a controlled substance, even in the face of contrary evidence offered by the defense." *United States v. Hobbs*, 62 M.J. 556, 558-59 (A.F. Ct. Crim. App. 2005) (citing *United States v. Ford*, 23 M.J. 331, 332 (C.M.A. 1987)); *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) ("A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation . . . provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use.")

Although Plaintiff presented a theory of improper test procedures or tampering, "it is the responsibility of the factfinder to determine what weight should be given to such evidence." *Green*, 55 M.J. at 81. Here, the BCNR reasonably inferred that Plaintiff's positive urinalysis results for cocaine and the testimony of an expert interpreting the urinalysis indicated that she used the drug wrongfully. AR 24–27, 373, *Wade v. United States*, 716 F. App'x 943, 947–48 (Fed. Cir. 2017) ("The evidence presented by the Navy on the urinalysis was sufficient to support a permissive inference of knowing, wrongful use, even in the face of contrary evidence offered by [plaintiff]").[3]

Finally, Plaintiff relies heavily on the NDRB's decision granting her request to upgrade her characterization of service, especially the finding that Plaintiff was "denied an opportunity to fully present her case before the command in a legitimate effort to advocate for her innocence

---

[3] Plaintiff argues in her reply that *Wade* is inapposite because, unlike in *Wade*, she "was not able to fully explore and cross examine the government's witnesses or expert, or attack the deficiencies of the urinalysis testing during the administrative separation board" and that the testimony during the proceeding "did not establish that there was strict compliance with Navy protocols." ECF No. 25 at 9. This argument, however, is unavailing. Although the facts are not identical, the administrative separation board here similarly considered a wide variety of evidence and found that the preponderance of the evidence was sufficient to meet the drug abuse basis for separation. AR 382, *Wade*, 716 F. App'x at 947–48. Here, the board considered the urinalysis screening results, testimony from an expert witness, testimony from some of the Sailors who administered the urinalysis screening, evidence from Plaintiff, witnesses Plaintiff called, and the Navy Drug Screening Lab's discrepancy report. AR 380. Further, the board in both cases found that the urinalysis was sufficient to support a permissive inference of wrongful use, "even in the face of contrary evidence." *Wade*, 716 F. App'x at 947–48, AR 26–27.

11

and retention." AR 118.  As the fact finders, however, the BCNR could disagree with the NDRB's findings.  Unlike the NDRB, the BCNR determined that Plaintiff's nonjudicial punishment and administrative separation proceedings were conducted in accordance with applicable instructions and regulations.  AR 3.  The BCNR noted that those proceedings were also reviewed and upheld by the separation authority.  *Id.*  Finally, the BCNR noted that it applies a presumption of regularity to the official actions of naval officers and that Plaintiff's evidence and argument were insufficient to overcome this presumption.  *Id.*  Thus, the BCNR concluded that there was "no probable material error, substantive inaccuracy, or injustice in the imposition of the nonjudicial punishment or Ms. Chipimarquez's administrative separation from the Navy."  *Id.*  Accordingly, given the totality of the circumstances, the board determined that Plaintiff's request did not merit relief.  *Id.*  Thus, BCNR's decision, which was supported by valid reasoning and applicable law, was not an abuse of discretion.   Further, the fact that BCNR did not agree with the NDRB does not amount to legal error requiring reversal.

For the reasons given above, this Court holds that the BCNR's determination was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  *See Heisig*, 719 F.2d at 1157 ("The arbitrary and capricious standard of review does not allow a reviewing court to reweigh the evidence but rather requires it to determine whether the conclusion being reviewed is supported by substantial evidence.").

### B. The BCNR's Review of Plaintiff's Administrative Separation Proceedings was Rational and in Accordance with Regulations.

Plaintiff alleges that the BCNR incorrectly found that no errors occurred during her administrative separation proceedings.  Plaintiff contends that the Navy erred during her administrative separation proceedings by: (1) not providing her all of the documents that she requested prior to the start of her administrative separation board; (2) denying her request to place the administrative separation board in abeyance; (3) by failing to provide her with the command investigation of the Navy Drug Screening Lab's discrepancy report.  ECF No. 14 at 53-54.  The Court will address each of these allegations below.

The BCNR's decision considered Plaintiff's allegations that several errors occurred during her administrative separation proceedings.  The BCNR decision states the following:

> The Board considered your contentions that a lack of due process, unfairness, inequities, and irregularities plagued your NJP and administrative separation (ADSEP) board process.
>
> . . . .
>
> The Board also considered your numerous contentions regarding your . . . ADSEP board proceedings.
>
> . . . .
>
> Concerning the ADSEP board proceedings, the Board noted that the ADSEP board

>unanimously found that the preponderance of evidence supported the basis for separation for drug abuse, unanimously voted for your retention, but also recommended a characterization of service as General (under Honorable conditions) in the event of separation. Your CO and chain of command disagreed with the board's recommendation for retention and, on 14 May 2018, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) (ASN (M&RA)) ordered your separation from naval service. ASN (M&RA) considered the letter of deficiency furnished by your civilian defense counsel and your chain of command's response. Ultimately, he found no evidence that your sample was discrepant or mishandled or that your sample was improperly tested. The Board determined that your chain of command sufficiently addressed your arguments regarding members of the ADSEP board and the handling of requested documents related to the NDL Discrepancy Report. The Board found no errors or injustice regarding your ADSEP board proceedings.  The Board noted the corrections to your record by the NDRB, the Board, however, determined that your NJP proceedings and ADSEP board proceedings were conducted in accordance with applicable instructions. Those proceedings were reviewed by ASN (M&RA) along with the evidence in the case. The Board thus determined that you were afforded all the due process required by instruction. Moreover, the Board is not an investigative body and relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. After consideration of the voluminous evidence you provided, the Board found this evidence insufficient to overcome this presumption. Accordingly, the Board concluded that there is no probable material error, substantive inaccuracy, or injustice in the imposition of the NJP or your administrative separation from the Navy. Accordingly, given the totality of the circumstances, the Board determined that your request does not merit relief.

AR 1-3.

First, Plaintiff alleges that the BCNR incorrectly found that the Navy did not violate "its own procedures and regulations" when the Navy did not provide her with all of the documents she requested prior to the start of her administrative separation board hearing.  *See* ECF No. 14 at 52–53 (stating that "[o]ver a dozen items were denied her").  The BCNR, however, addressed the administrative separation proceedings, finding no "errors or injustice regarding [Plaintiff's] [administrative separation] board proceedings."  AR 3.  The BCNR noted that the board members unanimously found "that the preponderance of evidence supported the basis for separation for drug abuse." *Id*.  The BCNR then considered the issues Plaintiff raised in her application but determined that the CO and Commander of Strike Group ONE "sufficiently addressed [Plaintiff's] arguments regarding members of the [administrative separation] board and the handing of requested documents related to the NDL Discrepancy Report." *Id*.  For these reasons, the BCNR rationally found that the administrative separation board proceedings "were conducted in accordance with the applicable instructions" and that Plaintiff was "afforded all the due process required by instruction." *Id*.

Thus, Plaintiff has not shown that the BCNR's decision upholding the separation board's

decision was arbitrary and capricious.  Although Plaintiff argues that the Navy violated its own procedures and regulations when it failed to provide certain requested documents, Plaintiff does not identify which, if any, regulations required the commanding officer to do so.  Neither Department of Defense Instruction 1332.14 (DoDI 1332.14) nor the Naval Military Personnel Manual (MILPERSMAN) required the commanding officer to provide Plaintiff with all of the documents she requested prior to the start of her administrative separation board.  *See* DoDI 1332.14, ¶ 5.3 (Reg. App'x at 156–57); MILPERSMAN 1910-512 (Reg. App'x at 31); *Jones Total Health Care Pharmacy, LLC v. DEA*, 881 F.3d 823, 834 (11th Cir. 2018) ("[A] party's entitlement to discovery in an administrative proceeding is governed by the agency's own rules.").

DoDI 1332.14 provides that, prior to the administrative separation board convening, the respondent-service member must be given notice of "[t]he basis of the proposed separation, including the circumstances upon which the action is based and reference to the applicable provisions of the Military Department's implementing regulation." DoDI 1332.14, encl. 5, ¶ 3.a.(1) (Reg. App'x at 156); see MILPERSMAN 1910-512 (no mention of discovery rights) (Reg. App'x at 31).  DoDI 1332.14 also provides that the respondent has a "right to obtain copies of documents that will be forwarded to the separation authority supporting the basis of the proposed separation" after the administrative separation board concludes.  DoDI 1332.14, encl. 5, ¶ 3.a.(5) (Reg. App'x at 156).  Thus, because Plaintiff has not identified a regulation that the Navy violated, Plaintiff has not shown that the Navy erred in this regard.

Second, Plaintiff's assertion that the senior member erred by not granting her request to postpone the administrative separation board after Plaintiff received the Navy Drug Screening Lab's discrepancy report, fails for similar reasons.  ECF No. 14 at 53–54.  The BCNR addressed this allegation below:

> Concerning the NJP proceedings and the commanding officer's (CO's) refusal to delay your NJP, the Board determined that there was sufficient evidence to prove each element of the offense by a preponderance of the evidence.
> . . . .
>
> The Board also determined that your CO was not obligated to grant your request to delay the NJP, thus he did not violate any order or regulation by proceeding with your NJP. The Board further determined that your positive urinalysis constituted sufficient and reliable evidence that you violated Article 112a, UCMJ, your NJP is valid, and your CO acted within his discretionary authority pursuant to the MCM.

AR 2.  Here, the BCNR rationally found that the Navy was not required to grant Plaintiff's request for a continuance as the Navy's regulations do not place any limits upon the senior member's discretion to deny requests for continuances.[4]  MILPERSMAN 1910-506 (Reg. App'x

---

[4] Additionally, Plaintiff argues in her reply that it was erroneous for the senior member of the board to not rule on her objections regarding a request for a continuance and additional documents prior to the board convening.  ECF No. 25 at 14.  The Senior Member, however, stated on the record that he understood her objection, but made clear the board would proceed.

at 29). Instead, Navy regulations authorize the senior member to "rule on all matters of procedure (to include granting of continuances) and evidence." MILPERSMAN 1910-506 (Reg. App'x at 29). Because Plaintiff fails to otherwise identify any regulation the senior member may have violated, this claim also fails.

Third, Plaintiff alleges that the commanding officer was required to provide her with the command's investigation related to the Navy Drug Screening Lab's discrepancy report because he referenced the report in his letter recommending Plaintiff's administrative separation. ECF No. 14 at 54.

The BCNR considered all of Plaintiff's allegations concerning errors that occurred during her administrative board proceedings, and the BCNR determined that Plaintiff was "afforded all the due process required by instruction. Moreover, the Board is not an investigative body and relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. After consideration of the voluminous evidence you provided, the Board found this evidence insufficient to overcome this presumption." AR 3.

Plaintiff has not provided any evidence showing that the BCNR abused its discretion when it found that Plaintiff was afforded all the due process required by instruction during her administrative board proceedings. Although Plaintiff takes issue with the fact that she did not receive the command investigation prior to the hearing, Plaintiff does not show that the Navy was required to provide this information.

According to DoDI 1332.14, service members have the "right to obtain copies of documents that will be forwarded to the separation authority supporting the basis of the proposed action." DoDI 1332.14, encl. 5, ¶ 3.a.(5) (Reg. App'x at 156). Here, however, the commanding officer did not forward the command investigation to the acting Assistant Secretary of the Navy, which Plaintiff's rebuttal letter acknowledges. *See* AR 23 (command investigation not listed as an enclosure), AR 882 (footnote 7). The letter, instead, simply references the investigations findings. Moreover, Plaintiff duly received the commanding officer's letter and had the chance to present a rebuttal in response to the commanding officer's letter, which Plaintiff did submit.[5]

---

AR 367 ("Objection is noted for the record but the board will proceed."). MILPERSMAN 1910-506 does not require a specific statement from the Senior Member for every ruling. Instead, the Senior Member made clear he understood the objection and continued the hearing despite it, as was within his authority under MILPERSMAN 1910-506. (Reg. App'x at 29); AR 367. Thus, Plaintiff's argument fails.

[5] In fact, Plaintiff discusses the initial discrepancy report in detail and offers a rebuttal to the commanding officer's letter regarding the investigation as well:

> The discrepancy report documents his failures weeks prior to this urinalysis. While command's position is that the discrepancy report does not highlight any issues with Petty Officer Chipimarquez's sample, the fact remains that the UPC failed to abide by basic, elementary procedures which were required of him, and as a result, this

15

AR 880-882. Thus, because DoDI 1332.14 only requires the commanding officer to provide Plaintiff with copies of documents that were forwarded to the separation authority, and the investigation report was not forwarded to the separation authority, Plaintiff fails to demonstrate that the recommendation letter's mention of the command investigation is a violation of any regulation.

For the reasons outlined above, Plaintiff has not shown that the BCNR erred when it found that the Navy properly discharged her. Thus, this Court holds that the BCNR's decision upholding the Navy's discharge determination, a decision which is afforded a high level of deference, was not arbitrary or capricious or an abuse of discretion. *See Cameron v. United States*, 550 Fed. Appx. 867, 872 (Fed. Cir. 2013) ("the level of deference is particularly high in the case of military regulations and military personnel decisions."); *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense.").

### III.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Government's Cross Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Motion. The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge

---

whole urinalysis sweep is suspect and cannot and should not be trusted.

AR 882.